Lesley E. Weaver (*pro hac vice* forthcoming)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

Gary W. Jackson, NC Bar No. 13976
Thomas M. Wilmoth, NC Bar No. 41684
**LAW OFFICES OF JAMES SCOTT FARRIN**
555 South Mangum Street
Suite 800
Durham, NC 27284
Tel: (919) 688-4991
gjackson@farrin.com

Steven A. Schwartz (*pro hac vice* forthcoming)
Beena M. McDonald (*pro hac vice* forthcoming)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Center
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633
steveschwartz@chimicles.com
bmm@chimicles.com

*Counsel for Plaintiff; Additional Attorneys Listed on Signature Page*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| David Conaway,<br><br>Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br> v.<br><br>Bank of America, N.A., Bank of America Corporation, and Does 1-10.<br><br>      Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violations of the Fair Credit Reporting Act<br>2. Violation of the Electronic Funds Transfer Act<br>3. Violation of the Truth in Lending Act<br>4. Negligence<br>5. Violations of North Carolina's Unfair and Deceptive Trade Practices Act<br>6. Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     JURISDICTION, VENUE, AND CHOICE OF LAW ............................................... 3

III.    PARTIES ....................................................................................................... 4

      A.    Plaintiff ................................................................................................ 4

      B.    Defendants .......................................................................................... 5

IV.     FACTUAL BACKGROUND ................................................................................ 5

      A.    BoA's Agreements with Class Members ................................................ 5

      B.    BoA's Unreasonable Sales Quotas ....................................................... 6

      C.    BoA's Practices Caused Serious Harm to Plaintiff and the Class .................... 7

      D.    BoA Knew of and Promoted the Unlawful Practices ............................ 12

      E.    BoA Concealed Its Unlawful Practices .............................................. 13

V.      CLASS ACTION ALLEGATIONS ................................................................... 15

VI.     TOLLING OF THE STATUTE OF LIMITATIONS............................................. 18

VII.    CAUSES OF ACTION .................................................................................. 19

      COUNT I Violations of the Fair Credit Reporting Act ("FCRA") On Behalf of
               Plaintiff and All Classes.............................................................19

      COUNT II Violation of the Electronic Funds Transfer Act ("EFTA") On Behalf of
               Plaintiff and All Classes.............................................................20

      COUNT III Violation of the Truth in Lending Act ("TILA") On Behalf of Plaintiff
               and All Classes.........................................................................21

      COUNT IV Negligence On Behalf of Plaintiff and All Classes ......................................22

      COUNT V (State Consumer Protection Statute Violations) Violations of North
               Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") On
               Behalf of Plaintiff and All Classes............................................22

      COUNT VI Unjust Enrichment On Behalf of Plaintiff and All Classes ..........................24

VIII.   PRAYER FOR RELIEF ................................................................................ 25

IX.     DEMAND FOR JURY TRIAL ...................................................................... 25

Plaintiff David Conaway ("Plaintiff" or "Class Member"), individually and as representative of Classes of similarly situated persons, hereby files this Class Action Complaint (the "Action") against Defendants Bank of America, N.A., Bank of America Corporation and Does 1-10 (colelctively, "BoA" or "Defendants"). In support thereof, Plaintiff David Conaway states as follows:

## I. INTRODUCTION

1. This action seeks redress for Class Members in whose names BoA opened accounts without Class Members' authorization or knowledge. Plaintiff Conaway seeks to represent a class of Bank of America consumers who had accounts opened for them by BoA without their knowledge or authorization from January 1, 2012 through July 31, 2023 ("Class Period") and suffered harm as a result.

2. The accounts include banking products such as credit cards, checking and savings accounts with associated debit cards, and other similar banking products ("Banking Products" or "Accounts"), and were opened by BoA to boost new account openings and to generate unlawful fees.

3. BoA engaged in and promoted a system of unfair, deceptive, illegal practices to maximize its performance and profits by generating and processing applications for and issuing Accounts without Class Members' knowledge or consent. Every time an unauthorized application was processed by BoA, without Plaintiff's consent or knowledge, BoA's practice was to obtain a credit report, which constituted a "hard inquiry" that impacted consumer credit scores, often to their detriment. In addition, Plaintiff had to devote time to investigating and correcting errors on his credit report due to BoA's unauthorized actions.

4. BoA generated fees from accounts for Banking Products opened without Class Members' consent, including fees generated when Class Members failed to maintain mandatory account balances or pay fees for accounts that they did not know existed.

5. During the Class Period, BoA internally promoted this fee-generating scheme by imposing unrealistic sales-based incentive goals on its employees. To meet the unreachable sales

goals and boost their evaluations, BoA employees were driven to engage in fraudulent, unlawful behavior, including submitting applications for Bank Products without Class Members' consent, forging Class Members' signatures on account applications, and abusing access to Class Members' personal sensitive information. BoA knew about and sanctioned the practice for years and did nothing to curb such practices.

6.      As a result, BoA engineered a fee-generating machine that produced profits for the corporation at the significant expense of its Class Members.

7.      Because of its systemic practice of opening Accounts without Class Members' knowledge or consent, BoA was able to report higher account holder metrics, thereby creating a false sense of business growth and earnings. BoA continued this practice for ten years, during which it continued to profit off the untold number of fraudulent checking and savings accounts it had assigned to Class Members.

8.      On July 11, 2023, the Consumer Financial Protection Bureau ("CFPB") issued a stipulated consent order ("Consent Order") against BoA for, among other things, its practice and policy of opening fake credit card accounts without Class Members knowledge or consent, to generate fees.[1] The CFPB stated:

> Bank of America employees illegally applied for and enrolled consumers in credit card accounts without consumers' knowledge or authorization. In those cases, Bank of America illegally used or obtained consumers' credit reports, without their permission, to complete applications. Because of Bank of America's actions, consumers were charged unjustified fees, suffered negative effects to their credit profiles, and had to spend time correcting errors.

9.      The Consent Order pointed out that BoA's employees were driven to open these new credit card accounts "in response to sales pressure" and "to obtain incentive awards."[2] Pursuant to a settlement entered with the CFPB, BoA must pay civil penalties totaling nearly $250 million for its actions.

---

[1] https://www.consumerfinance.gov/about-us/newsroom/bank-of-america-for-illegally-charging-junk-fees-withholding-credit-card-rewards-opening-fake-accounts/ (last visited July 25, 2023).
[2] *In the Matter of Bank of America, N.A.*, C.F.P.B. Admin. Proceeding File No. 2023-CFPB-0007 (2023), ECF No. 1, ¶ 25, Consent Order filed July 11, 2023

10. BoA's practice of applying for and opening accounts for Banking Products without Class Members' authorization or knowledge, and its failure to inform its Class Members when their personal information was accessed and used pursuant to this practice, is unlawful. Class Members who had applications submitted and accounts opened in their name without their consent suffered harm to their credit scores. Class Members also may have faced fees and charges to unauthorized accounts. Class Members were also forced to expend time and effort to investigate and seek closure of unwanted accounts, to mitigate exposure to potential identity theft, and to repair their credit scores.

11. Plaintiff brings this action under federal and state laws for actual damages, statutory damages, restitution, and all other relief as this Court deems appropriate.

## II. JURISDICTION, VENUE, AND CHOICE OF LAW

12. This Court has subject matter jurisdiction pursuant to federal law, under the Electronic Funds Transfer Act, the Truth in Lending Act, and the Fair Credit Reporting Act.

13. Also, this Court has subject matter jurisdiction over the Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because:

    a. This Action involves millions of putative Class Members;

    b. There is minimal diversity between at least one member of the putative Class and Defendants; and

    c. In the aggregate, the claims of Plaintiff and putative Class exceed the sum or value of $5,000,000, exclusive of costs and interest.

14. This Court has personal jurisdiction over BoA because BoA maintains its principal place of business in Charlotte, North Carolina. This Court also has personal jurisdiction over BoA because the events giving rise to this Action occurred in Charlotte, North Carolina. BoA has continuous and systematic contacts with the State of North Carolina, availing itself to the laws of North Carolina.

15.     Venue is proper in this Court under 28 U.S.C. § 1391, because BoA maintains its principal place of business in this District. Additionally, the conduct giving rise to the allegations and claims asserted in this Action originated and occurred in this District.

### III.    PARTIES

**A.    Plaintiff**

16.     Plaintiff David Conaway is a citizen and resident of the State of Virginia. Plaintiff became aware in early May, 2023 that BoA had opened an unauthorized checking account in his name. Plaintiff Conaway immediately contacted BoA upon seeing this new account displayed on his online banking portal. Plaintiff was initially told that he was likely a victim of fraud, but another representative later told him that BoA was the victim of a data breach. Plaintiff was assured that the account was "locked" and no money could be transferred in or out. After talking with BoA representatives, Plaintiff Conaway attempted to transfer money into and out of the new checking account to ensure that it was "locked" as he had been advised. Upon doing so, Plaintiff Conaway discovered that the transfers were successful – meaning that the account was not locked. Plaintiff Conaway made at least five phone calls to BoA and traveled to the nearest BoA branch to speak with a manager about the checking account. It took two to three weeks for BoA to finally close the account.

17.     Plaintiff opened an account with BoA pursuant to his execution of a contractual agreement with the bank. Upon information and belief, BoA's agreement with Plaintiff was substantially similar to its agreement with other consumers and Class Members.

18.     As a result of BoA's conduct, Plaintiff Conaway suffered significant harm, including damage to his credit score due to a credit report run without his authorization or knowledge, lost time spent reporting the issue to BoA and making sure it was corrected, and now pays for crediting monitoring and lock services.

## B.    Defendants

19.    Defendant Bank of American Corporation (the "BoA Corp.") is a Delaware corporation with its principal place of business located at Bank of America Corporate Center, 100 N. Tryon Street, Charlotte, North Carolina 28255. BoA Corp. is a bank holding company as well as a financial holding company. According to BoA Corp., it "operate[s its] banking activities primarily under the Bank of America, National Association (Bank of America, N.A." or BANA) charter."[3] As of December 31, 2022, BoA Corp. had $3.1 trillion in assets and a headcount of approximately 217,000 employees.[4]

20.    Defendant Bank of America, N.A. ("BANA") is the second largest bank chartered under the laws of the United States with its principal place of business located at Bank of America Corporate Center, 100 N. Tryon Street, Charlotte, North Carolina 28255. BANA's "retail banking footprint covers all major markets in the U.S., and [] serve[s] approximately 67 million consumer and small business clients with approximately 3,900 retail financial centers, approximately 16,000 ATMs, and leading digital banking platforms (www.bankofamerican.com) with approximately 44 million active users, including approximately 35 million active mobile users."[5]

21.    BANA is a subsidiary of BoA Corp.[6]

22.    Doe Defendants 1-10 are affiliates, subsidiaries, or related corporate entities of BoA whose identities will be identified in the discovery phase of this litigation.

## IV.    FACTUAL BACKGROUND

### A.    BoA's Agreements with Class Members

23.    During the Class Period, BoA offered an array of Banking Products, including checking and savings accounts (deposit accounts), and credit cards. New account openings are regarded by BoA as a "key statistic" of Consumer Banking segment and are heavily promoted in BoA's SEC filings and financial reports. For example, in its Form 10-K for the Fiscal Year ending

---

[3] https://investor.bankofamerica.com/regulatory-and-other-filings/annual-reports##document-50524-0000070858-23-000092-2
[4] *Id.*
[5] *Id.*
[6] Bank of America Corp., Annual Report (Form 10-K) (Feb. 22, 2023).

December 31, 2021, BoA reported 3,594,000 new credit card accounts in 2021 compared to 2,505,599 new credit card accounts in 2020. Similarly, BoA's earnings release for Q4 2022 touted "Bank of America Reports Q4-22 Net Income of $7.1 Billion; EPS of $0.85 Revenue Grew 11%1 led by 29% Improvement in Net Interest Income to $14.7 Billion" and the Consumer Banking division reported "Added ~195,000 net new Consumer checking accounts in Q4-22; 16th consecutive quarter of growth; added 1.1 million net new Consumer checking accounts in full-year 2022."

24.     To open these new Accounts, Class Members were required to fill out an application that asked for certain personal information, including their name, address, date of birth, social security number, and other personally identifying information. Class Members also may have needed to provide a copy of their driver's license or other form of identification.

25.     Class Members who opened accounts entered into agreement with BoA for banking services, which allowed BoA to charge legitimate fees associated with providing the agreed-to banking services. Upon information and belief, BoA's agreement also specified that it would only use Class Members' personal information to facilitate legitimate services and with their explicit consent or authorization.

26.     Class Members who entered into a contract with BoA for these banking services reasonably believed that BoA would adhere to these restrictions.

**B.     BoA's Unreasonable Sales Quotas**

27.     Since 2012, BoA has had a sales incentive program for its employees as part of compensation plans, rewarding them when they met sales goals for opening new accounts. This program was also used to evaluate employees' overall performance.

28.     BoA's sales targets and compensation incentives created high-pressure sales expectations, which led employees to go to great lengths to achieve their targets, including covertly opening accounts without Class Members' knowledge or consent and ultimately burdening Class

Members with needless debt and fees to fatten the BoA's earnings and paychecks of senior executives.

29.     The quotas are unrealistic because there simply are not enough consumers who enter a branch or otherwise submit applications on a daily basis for employees to meet their quotas through traditional means.

30.     Under pressure to meet the quotas, BoA employees were driven to submit applications for Banking Products without Class Members' consent. As part of this unlawful practice, BoA employees accessed and misused Class Members' personal information on account applications, forged consumer's signatures on account applications, and improperly obtained consumer credit reports, just to create a sale, even when the Class Members had not applied for or did not want the Products. Moreover, BoA did not otherwise have a permissible purpose for the consumer credit reports.

**C.     BoA's Practices Caused Serious Harm to Plaintiff and the Class**

31.     BoA's actions allowed these sales practices to flourish and harmed Class Members in ways they often did not discover until damage had already been done to their bank accounts and credit reports. As these fraudulent accounts were created without Class Members' knowledge or consent, discovery of the existence of these accounts often came about inadvertently. Some Class Members learned of the fraudulent accounts when they attempted to open an account at another bank and were informed of the existence of a fraud investigation on their credit report; because of this fraud investigation, the affected Class Members were prevented from opening accounts at other financial institutions.

32.     Class Members were placed in an impossible position when they inquired about the existence of these fraudulent accounts, as BoA often refused to provide information about the accounts since the Class Members did not possess the necessary confirming information, such as the phone number or email that had been used when the fraudulent account was opened in their name. BoA also refused to inform Class Members who had created these fraudulent accounts,

leaving them uncertain if they had been a victim of identity theft or of BoA's own aggressive sales practices and unreasonable sales quotas. Some Class Members, worried about the possibility of continued identity theft, purchased additional fraud protection through credit bureaus, leading to additional expense that they would otherwise not have incurred without BoA's fraudulent acts.

33.    Plaintiff Conaway, for example, pays out of pocket for credit monitoring and lock services which he previously did not consider necessary, due to BoA's actions.

34.    Some Class Members have described their experiences in dealing with unauthorized Accounts in online forums:

   a.  I have been getting multiple emails from Bank of America (this is the third one in about 6 weeks) that say an application has been submitted for a new credit card. It is coming from a valid Bank of America site / email and includes valid confirmation numbers. . . . I have *never* used Bank of America for a credit card and only had a small checking account with them back in 2005-07. I haven't had any other relationship (no mortgage or car loans) since the checking account was closed (that I am aware of). The first 2 times this happened, I Googled for the BofA number as I'm suspicious of clicking on email links. I called the number and got to the fraud department and reported it. Both times, they have had a valid credit card application on file with my name, SSN, address and even my valid email address (You'd think they would use a fake email address at the very least, but whatever).[7]

   b.  In Dec 2015, I received a credit card in the mail from BOA. I initially thought it was a replacement for the only cc I had with them and just shoved it into my desk drawer. I do not activate new cards until I need them typically. . . . Lo and behold, in Sept 2017, I got a letter from BOA stating

---

7

https://www.reddit.com/r/personalfinance/comments/xvnepc/what_do_i_do_about_continuing_credit_card/

that if I did not use the card in a few weeks it would be deactivated. My BOA card is my oldest line of credit and I didn't want to lose it. So, I went into my desk and saw that not only did the cards have different numbers, but my original card hadnt even expired yet. . . . Seeing how the card was sent to my house, I'm about 1000% convinced that BOA decided to open a card for me, sent it to me in hope that I would merely activate it and start using it, and it would accrue a beautiful annual fee or late charges.[8]

c. I've had two BOFA accounts opened with my person info in the past month and not by me.[9]

d. I used to have a credit card account with Bank of America but I stopped using it in 2018 because I had some issues with fraudulent charges/breaches and the customer service was very bad. The credit card was canceled by Bank of America because I wasn't using it for years…. [In September 20220, I got emails from Bank of America saying that checking accounts had been opened using their SSN.[10]

e. Someone keeps opening a Bank of America checking account with my info……including my unconfirmed email address, and then changing the email address once the account is approved. This has been happening every few weeks and I have to spend 45-90 mins on the phone every time getting the account shut down.[11]

35.     BoA's unlawful practices are widespread. The Consumer Financial Protection Bureau's complaint database shows that over 70,000 consumer complaints have been filed against

---

[8]
https://www.reddit.com/r/personalfinance/comments/7m7mww/bank_of_america_opened_and_closed_a_credit_card/.
[9] https://www.reddit.com/r/Banking/comments/1392n71/fraudulent_bank_of_america_account/
[10]https://www.reddit.com/r/personalfinance/comments/y58q0l/fraudulent_accounts_from_bank_of_america_keep/
[11]https://www.reddit.com/r/Scams/comments/12hk7yk/i_know_its_a_scam_but_im_not_sure_how_exactly_it/

Bank of America for issues pertaining to Banking Products and credit reports from January 1, 2012 through December 31, 2022. Below are a few examples of consumers' complaints relating to unauthorized Accounts being opened without their knowledge or authorization:

a. I have contacted Bank of America regarding fraudulent accounts opened in my name. I have never opened a credit card with them. XXXX was able to remove one of the credit cards from Bank of America from my credit report. When contacting Bank of America they tell me they are backlogged for 60 days. When contacting XXXX, they tell me that they get their information from the creditor. Conflicting/confusing information. 100% fraud.[12]

b. Customers like myself had credit cards opened in their names without their knowledge. Bonuses was given to the bank representative that fraudulently applied for the credit card. I have reported my incident to XXXX bank managers in XX/XX/XXXX and the other in XX/XX/XXXX. I mailed a letter to the CEO of Bank of America in XXXX XXXX. I gave the current bank manager ( XXXX ) a copy of the CEO letter. XXXX filed a formal complaint on my behalf. An employee, XXXX was terminated ( according to XXXX ) for committing the credit card frauds and I was not the only customer the fraud/scam was committed against. The bank manager XXXX XXXX, did not file a complaint in XX/XX/XXXX. She acknowledged that XXXX had committed credit card fraud and I had not received a disclosure.[13]

c. I received a letter from Bank of America saying that they received a credit card request that I had not filed.

---

[12]    Consumer    Complaint    No.    3400033,    CFPB    (reported    Oct.    9,    2019), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3400033.
[13]    Consumer    Complaint    No.    2104060,    CFPB    (reported    Sept.    9,    2016), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/2104060.

d.  I was notified by email from XXXX that someone opened a credit card with my social security number with Bank of America.[14]

e.  I keep getting emails and texts stating I have applied for and been approved for a Bank of America credit card. I have never applied for a credit card from Bank of America. I contacted them and reported the fraud but I keep getting texts/emails stating I have been approved and the credit card will be mailed to me. The only information I have on the credit card are the last 4 digits of XXXX…….. This all occurred starting XX/XX/22 and is continuing as of today.[15]

f.  I received notices from Bank of America that I opened a checking and savings account at the Bank. The following day, I received mail that the Bank closed the newly opened accounts immediately. I never applied to open these accounts at Bank of America. When I visited the branch location on XXXX XXXX XXXX, XXXX, MA today to discuss this issue, XXXX XXXX, Personal Banker of BoA, informed me that my SSN was used to open these accounts. I am a victim of identity theft.[16]

g.  Someone used my personal information to open a checking account with Bank of America, and Bank of America is now holding me responsible for {$80.00} in bounced check fees. They have refused to resolve this with me, I have tried calling in to their fraud department various time, only to be told the only way to handle this is in person at a branch. I have gone to a branch

---

[14]    Consumer Complaint No. 5758954, CFPB (reported July 11, 2022), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/5758954.
[15]    Consumer Complaint No. 5743139, CFPB (reported July 6, 2022), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/5743139.
[16]    Consumer Complaint No. 1781414, CFPB (reported Feb. 10, 2016), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/1781414.

only to be told that they are holding me responsible because they believe the charges are consistent. Consistent with what? This is not my account.[17]

36. BoA's unlawful practices negatively impacted Class Members and caused them numerous harms, including, but not limited to:

    a. Economic harm for fees charged for unauthorized accounts;

    b. Negative impact to their credit reports affecting job applications, applications for consumer banking accounts with other banks, loans for automobiles, and mortgage applications;

    c. Loss of control over their personal information;

    d. Out of pocket costs associated with purchasing of costly identity theft protection services to ensure against further fraudulent activities;

    e. Spending time and effort to investigate the facts, to dispute charges, to seek closure of unwanted accounts; and

    f. Needing to mitigate harm going forward.

**D.    BoA Knew of and Promoted the Unlawful Practices**

37. BoA knew or should have known that its employees opened unauthorized Banking Product accounts.

38. From 2012 to 2022, BoA created and serviced a sales incentive program for its employees as part of compensation plans, rewarding them when they met sales goals for opening new accounts. BoA tied compensation to quotas for management and employees responsible for the sale of consumer credit card accounts as well as, on information and belief, other Banking Product accounts. In this way, BoA put a financial incentive for the opening of new accounts.

39. While setting this financial incentive, BoA simultaneously failed to take the necessary steps to prevent or discourage unauthorized account creation. BoA for instance, had access to and monitored actions taken on its computers by employees, which should have alerted

---

[17] Consumer Complaint No. 2307740, CFPB (reported Jan. 14, 2017), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/2307740.

it to unusual activities such as numerous unfunded accounts, frequent reopening of closed accounts, and/or consumer accounts in which the only activities were fees charged by BoA.

40. BoA also did not implement proper restrictions on employees' access to Class Members' sensitive personal information, which BoA's employees impermissibly used to apply for new accounts without Class Members' authorization or consent. BoA should have closely monitored and limited employee-access to Class Members' personal information, such that unauthorized accounts would have been flagged. If BoA had implemented proper controls over Class Members' personal information, its employees would not have been able to continue creating unauthorized accounts.

41. Furthermore, BoA has acknowledged that prior to March 2017, it did not require Class Members who opened accounts in its branches to provide signatures.[18] Such a requirement would have served as clear evidence of the Class Members' intent.

42. In addition, BoA received numerous complaints from Class Members regarding unauthorized accounts, which should have alerted it of an issue.

43. BoA's failure to monitor and prevent such conduct, including its reliance on its high-pressure incentive programs that led to unauthorized account opening, is particularly egregious considering that another prominent bank, Wells Fargo, faced stiff penalties for similar practices in 2016.[19]

44. Despite BoA's knowledge of this unlawful practices by its employees, it did little, if anything, to terminate the practices, nor to reform the sales incentive program.

E.    BoA Concealed Its Unlawful Practices

45. BoA actively concealed its practice of applying for and opening unauthorized Accounts for Class Members. BoA concealed its fraud by withholding information regarding the

---

[18] *In the Matter of Bank of America, Corp*, BoA Petition to Set Aside or, In the Alternative, Modify the Civil Investigative Demand, at 10 (March 28, 2019), available at 201909_cfpb_bank-of-america_petition.pdf
[19]    https://www.npr.org/sections/thetwo-way/2016/09/08/493130449/wells-fargo-to-pay-around-190-million-over-fake-accounts-that-sparked-bonuses

source of the fraudulent accounts. Plaintiff and Class Members who had Accounts opened under their name at BoA only learned of the Accounts when they checked their credit reports or tried to open an Account at another institution.

46.     When Plaintiff and Class Members inquired with BoA about the existence of these accounts, BoA did not tell them it was the bank itself that opened an account without their permission, not a third party.

47.     Plaintiff Conaway, for example, was originally told by a BoA representative that he was a victim of fraud. Another BoA representative told him that BoA had suffered a data breach. This misinformation prevented Plaintiff Conaway from taking action that may have resolved his predicament sooner. It wasn't until news of the Consent Decree, that Plaintiff Conaway learned that it was BoA's own employees who had created the fraudulent account, along with millions of other fraudulent accounts.

48.     BoA misled investigators and the public by making false and misleading statements. For example, in response to a Civil Investigation Demand issued by the CFPB on March 1, 2019, BoA stated that the evidence that it had provided to the CFPB was proof that it did not have any "systemic sales misconduct" issues.[20] Class Members had no reason to know this representation was false and misleading. Nor could Class Members learn of BoA's unlawful conduct through other means.

49.     Indeed, in a supplemental submission to the CFPB, BoA stated that it "does not publicly disseminate": (1) information about its internal controls relating to its investigation of wrongdoing; and (2) "the details of its incentive compensation plans," which would include information about BoA's sales incentive program for opening unauthorized Banking Product accounts.[21]

_____

[20] *In the Matter of Bank of America, Corp*, BoA Petition to Set Aside or, In the Alternative, Modify the Civil Investigative Demand, at 1.
[21] *In the Matter of Bank of America, Corp*, BoA Suppl. Submission in Support of Its Request for Confidential Treatment at 4 (August 2, 2019), available at https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201909_cfpb_bank-of-america_supplemental-submission-confidential-treatment.pdf

50.     In 2019, BoA spokesman Bill Halldin assured the public that BoA had thoroughly investigated its sales practices, and that "… following industry attention to these issues years ago, [BoA] implemented additional controls and avenues for employees to express concerns through multiple channels as well as our Employee Relations group."[22]

51.     By assuring the public and the CFPB that it did not have any issues of sales misconduct and keeping details of its internal controls and sales incentive program confidential, BoA concealed its practice of opening authority Banking Product accounts. Prior to the CFPB's July 11, 2023 Consent Order,[23] Class Members had no way to know of BoA's unlawful conduct.

52.     In July 2023, the CFPB and OCC levied fines and penalties against BoA. The CFPB ordered BoA to pay over $100 million to compensate customers for the harm caused by its practices, and another $90 million in penalties.[24] The concurrent OCC order set forth fines of $60 million related to BoA's overdraft program.[25]

53.     The CFPB's Consent Order sets forth that BoA opened accounts without authorization "in response to sales pressure to obtain incentive rewards." Further, the Consent Order described harm to consumers from the opening of unauthorized accounts, including that such accounts "may have negatively impacted consumers including through fees charged; impacts to consumer credit profiles; the loss of control over personal identifying information; the expenditure of consumer time and effort investigating the facts and seeking closure of unwanted accounts; and the need to monitor and mitigate the harm going forward."

## V.     CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

55.     Plaintiff seeks to represent the following Classes:

---

[22]https://www.americanbanker.com/news/ex-bank-of-america-employees-allege-extreme-pressure-to-sell-credit-cards
[23]https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_bank-of-america_2023-CFPB-0007_01_2023-07.pdf
[24] *Id.*
[25] https://www.occ.gov/news-issuances/news-releases/2023/nr-occ-2023-71.html.

Class Definition. All persons in the United States who had one or more unauthorized or unwanted account(s) for BoA's Banking Products opened by BoA or BoA employee(s) during the Class Period.

56.     **Numerosity and Ascertainability**: The members of the Class are so numerous that joinder of all members of the Class would be impractical. The proposed Class contains many thousands of members. The precise number of members can be ascertained through discovery, which will include Defendant's records.

57.     **Commonality and Predominance**: The action involves common questions of law and fact, which predominate over any question solely affecting individual Class Members. These common questions for Class Members' priority claims include:

  a.   Whether and how BoA and its employees engaged in unlawful practices by applying for and obtaining consumer reports to open Accounts without Class Members' knowledge or authorization;

  b.   Whether BoA charged fees and other fines to Class Members relating to unauthorized Accounts;

  c.   Whether BoA and its employees accessed Class Members' reports during the process of opening Accounts without Class Members' knowledge or authorization;

  d.   Whether BoA acted willfully or knowingly when opening credit cards and other Banking Products without Class Members' knowledge or authorization;

  a.   Whether BoA issued credit cards for Class Members in violation of the TILA;

  b.   Whether BoA violated the EFTA by issuing unauthorized credit cards to Plaintiff and the Class;

  c.   Whether BoA knew or should have known of its employees' deceptive, unlawful practices;

d. Whether BoA breached a duty to Class Members by failing to adequately monitor and control access to Class Members' personal information and to ensure that its employees did not apply for and/or open Accounts without the knowledge or authorization of the Plaintiff and Class Members;

e. Whether BoA breached its contracts with Plaintiff and the Class;

f. Whether BoA has engaged in unfair methods of competition, unconscionable acts or practices, and unfair fair or deceptive acts or practices with the unauthorized opening of accounts and other Products;

g. Whether BoA violated North Carolina and/or other states' consumer protection statutes;

h. Whether BoA has been unjustly enriched;

i. Whether BoA is liable for conversion;

j. Whether, because of BoA's conduct, Plaintiff and the Class have suffered damages (and, if so, the appropriate amount thereof); and

k. Whether because of BoA's misconduct, Plaintiff and the Class are entitled to damages.

58. **Typicality**: Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendants' substantially uniform misconduct as described above. The Plaintiff representing the Classes is advancing the same claims and legal theories on behalf of himself and all other members of the Classes that he represents, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and the Class arise from the same operative facts and are based on the same legal theories.

59. **Adequacy**: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Classes' interest will be fairly and adequately protected by Plaintiff and his counsel.

60.    **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be virtually impossible for the Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

61.    Class certification under Rule 23(b)(2) is also warranted for purposes of injunctive and declaratory relief because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive and declaratory relief are appropriate with respect to each Class as a whole.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

62.    All applicable statutes of limitation have been tolled by BoA's knowing and active fraudulent concealment and denial of the facts alleged herein through the time period relevant to this action.

63.    Plaintiff and Class Members did not know about BoA's and its employees' actions to open fraudulent accounts without Plaintiff's or Class Members' knowledge and consent. When individual Class Members did learn about this unauthorized activity and sought answers from BoA, BoA withheld information from them, thereby preventing them from learning about the factual bases for these claims for relief. Additionally, BoA failed to report its actions to the public or to governmental oversight authorities, thereby allowing BoA to continue to profit from this fraudulent scheme.

64.     Despite reasonable diligence on their part, Plaintiff and Class Members remained ignorant of the factual bases for their claims for relief. BoA's withholding of material facts concealed the claims alleged herein and tolled all applicable statutes of limitation.

## VII.     CAUSES OF ACTION

### COUNT I
### Violations of the Fair Credit Reporting Act ("FCRA")
### On Behalf of Plaintiff and All Classes

65.     Plaintiff incorporates by reference all allegations of this complaint as though fully set forth herein.

66.     As individuals, Plaintiff and Class Members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

67.     As defined in 15 U.S.C. § 1681a(d), a consumer report is: any "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."

68.     When BoA opens a new Banking Product account or starts a new financial service, it obtains a consumer report, as that term is defined in 15 U.S.C. § 1681a(d), to review and assess the consumer's creditworthiness for the new product for whom the account is opened.

69.     BoA agreed and represented in its agreements with the national consumer reporting agencies (CRAs) from which it obtains consumer reports that BoA would use consumer reports only for lawful purposes under FCRA as defined 15 U.S.C. § 1681b(f).[26]

---

[26] A "person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer is authorized to be furnished" and one other condition is met. 15 U.S.C. §1681b(f).

70.     The authorized purposes specified in FCRA include consumer reports furnished "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

71.     15 U.S.C. §§ 1681b, 1681n, and 1681q give BoA statutory requirements to refrain from obtaining or using consumer reports from CRAs under false pretenses, and without proper authorization from the consumer who is the subject of the report.

72.     BoA has an affirmative duty to follow reasonable procedures, including those that would prevent the impermissible accessing of consumer reports. 15 U.S.C. § 1681b(f).

73.     However, BoA regularly pulled consumer reports regarding consumers without their knowledge or consent to open new unauthorized Banking Product accounts and services as part of its scheme, in violation of the FCRA.

74.     By using or obtaining consumer reports without a permissible purpose, BoA violated Section 604(f) of FCRA, 15 U.S.C. § 1681b(f).

75.     Pursuant to sections 1681n and 1681o, BoA is liable for negligently and willfully violating the FCRA by accessing the consumer reports without a permissible purpose or authorization under the FCRA.

76.     Plaintiff and the Class seek all available damages and relief under the FCRA.

**COUNT II**
**Violation of the Electronic Funds Transfer Act ("EFTA")**
**On Behalf of Plaintiff and All Classes**

77.     Plaintiff incorporates by reference all allegations of this complaint as though fully set forth herein.

78.     Congress created the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693, *et seq.,* to establish a framework to regulate electronic fund and remittance transfer systems, and to establish individual consumer rights related to electronic fund transfers.

79.     "No person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than – 1) in

response to a request or application therefor; or 2) as a renewal or, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor." 15 U.S.C.A §1693i(a).

80.    Every time BoA opened new unauthorized Banking Product accounts, issued debit and/or credit cards, and/or facilitated other means of access to the unauthorized accounts allowing for electronic funds transfers, BoA violated this provision.

81.    Plaintiff and the Class received credit cards from BoA when they did not request or apply for such cards.

82.    Plaintiff and the Class received other means of accessing unauthorized accounts, such as online banking access, that would allow them to initiate an electronic fund transfer(s).

83.    Pursuant to 15 U.S.C. § 1694m, BoA is liable for actual damages, an amount to be determined by the Court related to the frequency, persistence and other factors of BoA's violations, plus attorneys' fees and costs.

### COUNT III
### Violation of the Truth in Lending Act ("TILA")
### On Behalf of Plaintiff and All Classes

84.    Plaintiff incorporates by reference all allegations of this complaint as though fully set forth herein.

85.    Under TILA, "no credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. TILA's Regulation Z requires that no credit card shall be issued to any person except in response to an oral or written request or application for the card; or as a renewal or, or substitute for, an accepted credit card. 12 C.F.R. § 1026.12(a)

86.    BoA violated TILA and Regulation Z by issuing credit cards to Plaintiff and the Class without their consent and not in response to an oral or written request or application for the card or as a renewal of, or substitute for, an accepted credit card. 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a).

87.    Plaintiff and the Class seek all available damages and relief under TILA.

## COUNT IV
## Negligence
### On Behalf of Plaintiff and All Classes

88.     Plaintiff incorporates by reference all allegations of this complaint as though fully set forth herein.

89.     BoA had a duty to adequately control access to Class Members' personal information and to ensure its employees did not apply for and/or authorize new Accounts without consumers' knowledge or authorization.

90.     The existence of this duty is confirmed by the fact that the statutes outlined above.

91.     BoA breached its duty to consumers by failing to control access to Class Members' personal information, and by failing to take adequate steps to ensure its employees did not apply for and/or authorize new Accounts without Class Members' knowledge or authorization.

92.     As a result, Plaintiff and the Class were injured and sustained damages.

93.     Plaintiff and the Class seek actual damages and all appropriate relief for BoA's negligence.

## COUNT V
## (State Consumer Protection Statute Violations)
### Violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA")
### On Behalf of Plaintiff and All Classes

94.     Plaintiff incorporates by reference all allegations of this complaint as though fully set forth herein.

95.     UDTPA protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. UDTPA "declares unlawful" all "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affective commerce." UDTPA 75-1.1(a).

96.     BoA affected commerce by engaging in trade directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b), by advertising, offering, and selling Banking Products, including checking and savings accounts, loans, and credit cards.

97.     In violation of UDTPA, BoA engaged in unfair, unlawful and/or deceptive trade practices, including but not limited to:

a.   Using Plaintiff's and the Class Member's personal information for profit by opening Banking Product accounts that they did not authorize;

b.   Opening Banking Product accounts in the names of Plaintiff and the Class Members without their knowledge or consent.

c.   Submitting credit card applications and applications for other Baking Products, using information which BoA was not authorized;

d.   Acquiring credit reports of Plaintiff and the Class for opening Banking Product accounts without their knowledge or consent;

e.   Failing to safeguard Plaintiff's and the Class Member's personal information, as that term is defined under N.C. Gen. Stat. Ann. § 75-61(10);

f.   Failing to disclose or fraudulently concealing unauthorized accounts to Plaintiff and the Class Members; and

g.   Misleading Plaintiff and the Class Members as to the cause and origin of the accounts created without their consent.

98.     BoA engaged in the above conduct intentionally, recklessly, and/or negligently for the benefit of BoA and/or its employees, and to the detriment of Plaintiff and Class Members.

99.     BoA's conduct was unfair and deceptive as it involved using Plaintiff's and Class Members' personal information without their knowledge or consent. Such conduct offends public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff and Class Members.

100.    BoA's conduct was an inequitable assertion and abuse of power and position since the company secretly used private and confidential information entrusted to it by its customers for the company's benefit and at its customers' expense. Plaintiff and Class Members never authorized the use of their personal information in this manner, nor were they informed that it would be so used.

101.    Moreover, Plaintiff and Class Members were misled about how and why these accounts were opened by being told they were victims of identity theft or a data breach.

102.    Plaintiff and Class Members were injured by the impact on their credit scores because of the credit checks performed to open these unauthorized account; being charged fees for accounts and services for which they did not authorize; loss of control of their personal identifying information; spending time and effort investigating and closing these accounts; being given false or misleading information on how these accounts were opened; and the need and expense monitoring their credit reports, personal identifying information, and bank accounts going forward.

103.    As a direct and proximate result of these deceptive acts and practices, Plaintiff and the Class suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including time and expenses related to monitoring their financial accounts for fraudulent activity, and loss of value of their personal information.

104.    Plaintiff and the Class seek all available damages and relief under the UDTPA, including but not limited to treble damages as well as reasonable costs and attorneys' fees.

<b>COUNT VI<br>Unjust Enrichment<br>On Behalf of Plaintiff and All Classes</b>

105.    Plaintiff incorporates by reference all allegations of this complaint as though fully set forth herein.

106.    As a result of BoA's unlawful and deceptive actions described above, BoA was enriched at the expense of Plaintiff and the Class through the payment of fees, penalties, and other charges resulting from unlawfully opened accounts, products and services.

107.    Under the circumstances, it would be against equity and good conscience to permit BoA to retain the ill-gotten benefits that it received from Plaintiff and the Class, because BoA used illegal, deceptive, and/or unfair practices to open Banking Product accounts for Plaintiff and Class Members without their knowledge or authorization. Thus, it would be unjust and inequitable for BoA to retain those benefits without restitution to Plaintiff and the Class for the monies paid to BoA because of the unfair, deceptive, and/or illegal practices.

108. As a result of this conduct, Plaintiff and the Class seek disgorgement of all ill-gotten profits as a result of the scheme.

## VIII. PRAYER FOR RELIEF

109. WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment in his favor and against Defendants, as follows:

a) For an order certifying the Classes and, under Federal rules of Civil Procedure 23(b)(2) and 23(b)(3), appointing Plaintiff as Class Representative and appointing the lawyers and law firm representing Plaintiff as counsel for the Class;

b) Declaring BoA's actions to be false, misleading and/or deceptive;

c) Permanently enjoining BoA from performing further unfair and unlawful acts as alleged herein;

d) For all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class, including disgorgement, unjust enrichment, and all other relief allowed under applicable law;

e) Awarding Plaintiff and the Class appropriate relief, including actual and statutory damages, restitution, disgorgement, and punitive damages;

f) Awarding equitable, injunctive, and declaratory relief as may be appropriate;

g) Awarding all costs, including experts' fees and attorneys' fees, as well as the costs of prosecuting this action;

h) Awarding pre-judgment and post-judgment interest as prescribed by law; and

i) Granting such other and further relief as the Court may deem just and proper.

## IX. DEMAND FOR JURY TRIAL

110. Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all the issues so triable.

Dated: August 29, 2023

By: */s/ Gary Jackson*
Gary W. Jackson NC Bar No. 13976
Thomas M. Wilmoth NC Bar No. 41684
**LAW OFFICES OF JAMES SCOTT FARRIN**
555 South Mangum Street
Suite 800
Durham, NC 27284
Tel: (919) 688-4991
gjackson@farrin.com
twilmoth@farrin.com

Lesley E. Weaver (*pro hac vice* forthcoming)
Anne K. Davis (*pro hac vice* forthcoming)
Joshua D. Samra (*pro hac vice* forthcoming)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Steve A. Schwartz (*pro hac vice* forthcoming)
Beena M. McDonald (*pro hac vice* forthcoming)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Center
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633
steveschwartz@chimicles.com
bmm@chimicles.com

*Counsel for Plaintiff*